# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.10-00094-02-CR-W-DGK |
| | ) | |
| GILBERTO BALDENEGRO-VALDEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING MOTION FOR AQUITTAL/NEW TRIAL

Pending before the Court is Defendant Gilberto Baldenegro-Valdez's Motion for Judgment of Acquittal, or Alternately Motion for New Trial (doc. 117) brought pursuant to Federal Rule of Criminal Procedure 29 and 33. Finding no merit to any of the ten grounds raised in Defendant's Suggestions in Support, the motion is DENIED.

### Standard

"A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006) (quotations omitted). "This standard is 'very strict' and a jury's verdict should not be overturned lightly." *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007). In making this determination, the court "views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." *Id.* at 856. Under this standard, evidence supporting a conviction is sufficient "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Weston*, 4 F.3d 672, 674 (8th Cir. 1993).

Rule 33(a) permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Under the rule, the "district court has broad, but limited, discretion to grant or deny a motion for a new trial based on the sufficiency of the evidence, and 'it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *United States v. Aguilera*, 625 F.3d 482, 486 (8th Cir. 2010) (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). That said, motions for new trials based on the sufficiency of the evidence "are generally disfavored," and "unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Aguilera*, 625 F.3d at 487.

**Discussion**

Defendant raises ten grounds in his motion. The Court finds no merit to any of these arguments.

**1.    There was no error in denying Defendant's motion to suppress.**

Although this issue has already been raised and preserved for appeal several times previously, Defendant again argues the Court erred in denying his motion to suppress, his objections to the report and recommendation regarding the suppression motion, and his motion to reconsider denial of the motion to suppress. The Court reiterates its earlier rulings that the officers' warrantless search of the Taurus on March 21, 2010, was a valid search under the automobile exception to the warrant requirement, and that the amphetamine found in the search and Defendant's subsequent statement to the police should not have been excluded.

**2.    There was no error in denying three motions in limine.**

Next, Defendant argues the Court erred in denying motions in limine to exclude the use of recording transcripts, evidence of methamphetamine found in a hidden compartment in the car

driven by Defendant, and evidence of uncharged misconduct for a prior drug sale. The Court's order (doc. 96) denying these motions in limine, along with the Court's rulings at trial, amply explains the reasoning for denying these motions, and the Court will not repeat its reasoning once again here.

**3.     There was no error in jury selection.**

Defendant contends the Court erred in striking juror #1 for cause on the grounds that she had difficulty reading and writing, and erred in not striking juror #19 for cause because she is the brother of a sergeant in the Kansas City Police Department's Homicide Unit. Defendant contends juror #1 was sufficiently capable of reading and understanding at a level necessary to act as a juror in this case, and that although juror #19 claimed he could be fair and impartial, "the Court has a duty to look beyond such a generic statement to the record as a whole."

The district court has "substantial discretion" in conducting voir dire. *United States v. Wright*, 340 F.3d 724, 733 (8th Cir. 2003). This is because the trial court "is in the best position to assess the demeanor and credibility of the prospective jurors." *United States v. Elliot*, 89 F.3d 1360, 1365 (8th Cir. 1996). The district court presumes "a prospective juror is impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his impressions or opinions and render a verdict based on the evidence presented in court. *United States v. Dale*, 614 F.3d 942, 959 (8th Cir. 2010). "Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position." *Moran v. Clarke*, 443 F.3d 646, 650-51 (8th Cir. 2006).

There was no error in striking juror #1 for cause because she indicated she could read at a third grade level only, and while she did not have difficulty reading the simple words on the back of her juror card, during trial she would have been required to read numerous pages of

3

transcribed audio conversations which were considerably more challenging. Accordingly, the Court did not err in striking her for cause.

Likewise the Court did not err in declining to strike juror #19. Under follow-up questioning by the Court, the juror stated he could be fair and impartial and judge the case on the evidence presented at trial, and nothing in his demeanor or answer suggested he was being less than honest. Given his answers and sincerity, the Court had no basis to strike him for cause. Defendant has cited no authority, nor can the Court find any, suggesting that simply because a prospective juror's relative works for a police department, that juror is not fit to serve on a jury in a criminal case.

**4.     The Court did not err in limiting cross-examination of the confidential informant.**

Defendant also argues the Court erred in limiting the cross-examination of the confidential informant, Franklin Espana, to the statutory range of punishment for the offenses to which he pled guilty and the sentence he hoped to receive in return for his cooperation. Without citing any caselaw or other authority, Defendant argues he should have been allowed to question him about the quantity or purity of methamphetamine he was arrested with, prior sales, his sources of methamphetamine, where he hid methamphetamine, etc.

"While a witness may be impeached by inquiring into his prior convictions, 'the scope of such examination is strictly limited in order to avoid the confusion resulting from the trial of collateral issues, and also to avoid unfairness to the witness.'" *United States v. Street*, 548 F.3d 618, 627 (8th Cir. 2008) (quoting *United States v. Roenigk*, 810 F.2d 809, 814 (8th Cir. 1987). In *Street*, the district court limited the defendant's questioning of a witness to his prior convictions and to demonstrating that the witness was convicted following a jury trial. The Eighth Circuit affirmed, reasoning that "[t]o inquire further and to contest the truthfulness of [the

4

witness's] individual past statements would be to relitigate his prior conviction. That is precisely the sort of confusing, collateral issue warned against by *Roenigk*." *Id.*

In the present case Espana was questioned by both defendants about his prior convictions for conspiring to distribute 50 grams or more of methamphetamine and possession with intent to distribute 50 grams or more of methamphetamine, the dates of this convictions, the statutory range of punishment, the minimum and maximum punishment he faced, the fact that he had a plea agreement with the government, the fact that he hoped to receive a lesser sentence by cooperating with the government, and the fact that he could receive a sentence under the statutory minimum if the government filed a downward departure motion. Consequently, the Defendant was able to fully cross-examine Espana on any potential bias or incentive for his testimony. Allowing Defendant to cross-examine Espana about the purity of the methamphetamine he had been arrested with before and the other underlying facts of his previous convictions would have created a mini-trial on irrelevant collateral matter and risked confusing the jury about what the issues in this trial were. Consequently, the Court did not err in limiting Espana's cross-examination.

**5.     The Court did not err in failing to grant a new trial based on Espana's alleged perjury.**

Defendant alleges that "Franklin Espana lied," and that this perjury was the linchpin of the case against him. The Court finds no merit to this accusation. Defendant cross-examined Espana on the perceived inconsistencies in his story, and the jury was instructed that it could believe all, some, or none of Espana's testimony. Accordingly, there was no error here.

## 6. There was no error in admitting the audio recordings and related transcripts.

Next, Defendant contends that the Government failed to make a proper foundation for the admission of the audio recordings made during the investigation and the transcripts of these recordings, and that the government did not establish a chain of custody for this evidence.

"A proper foundation for the introduction of tape-recorded evidence requires that 'the recording device was capable of taking the conversation now offered in evidence.'" *United States v. Henderson*, 440 F.3d 453, 457 (8th Cir. 2006) (quoting *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974). "The very fact that the tape recordings exist establishes that the recording device was capable of picking up sounds and taking the conversation offered." *United States v. McCowan*, 706 F.2d 863, 865 (8th Cir. 1983).

In this case the existence of the recordings establishes that the recording device was capable of picking up sounds. Several different witnesses identified the speakers, and the Government authenticated the recordings through Espana, who was an actual participant in the conversations and who testified that the recorded conversations accurately reflected the conversations. The authentication was confirmed by Detectives Corbin, Brooks, and Special Agent Alvarez, who testified about the operation of the recording devices and what they heard over the listening devices. Their testimony concerning what they did with the recordings established the chain of custody. Although the audio recordings were in Spanish and parts of the tapes were difficult to hear, the translator testified that she was able to understand most of the conversations, and where she could not, she noted as much in the transcript.

The Court finds no error in the admission of the recordings and transcript.

**7.     A new trial is not necessary because counsel for the Government mentioned the phrase "suppression hearing."**

During the trial, counsel for the Government asked a question about the "suppression hearing" transcript.  Defendant objected and moved for a mistrial.  The Court denied the motion, but gave a curative instruction.  Defendant argues that this was insufficient, and that he should be given a new trial.

The Court does not see how the stray comment resulted in any prejudice to Defendant.  To the degree there was any prejudice, the Court is confident its limiting instruction cured the problem.

This portion of the motion is denied.

**8.     The Court did not err in declining to use the Defendant's jury instructions.**

Defendant also contends the Court erred in failing to give his proposed instructions based on model Eighth Circuit Instructions No. 5.06G and 9.05 relating to his theories of defense.

"A defendant is entitled to a theory of defense if it is timely requested, it is supported by the evidence, and correctly states the law.  A defendant is not, however, entitled to a particularly worded instruction."  *United States v. Beale*, 620 F.3d 856, 866 (8th Cir. 2010).  The Court declined to give proposed instructions because the evidence did not support giving them.  The Court also declined to modify instruction number 22 because the instruction as given accurately described the law, and a defendant is not entitled to a particularly worded instruction.

Accordingly, there was no error here.

**9.     The Court did not err in prohibiting Defendant from arguing he was part of an uncharged, second conspiracy.**

Related to the instruction argument, Defendant also contends he should have been allowed to argue that he was involved in a different methamphetamine conspiracy than the one charged. Defendant contends that the Court, "using the arguments of the government outside the presence of the jury instead of the evidence actually presented to the jury, deprived defendant of the opportunity to present and argue a case for his potential involvement in a second conspiracy." The Court prohibited Defendant from arguing that he was involved in a separate conspiracy from the one charged because no evidence was adduced at trial which would support a separate conspiracy. As a result, there is no error here.

**10.    Sufficient evidence supports Defendant's conviction.**

Finally, Defendant argues that the government failed to present sufficient evidence to convict him of conspiring to distribute methamphetamine. In determining whether there was sufficient evidence to support the verdict, the court looks "at the evidence in the light most favorable to the verdict and accept[s] as established all reasonable inferences supporting the verdict." *United States v. Cabrera*, 116 F.3d 1243, 1244 (8th Cir. 1997). "To obtain a conviction for conspiracy, the government must prove beyond a reasonable doubt that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy." *Id*. *United States v. Adams*, 401 F.3d 886, 893 (8th Cir. 2005). The agreement does not need to be express; a tacit understanding between the parties is sufficient, which "may be shown wholly through circumstantial evidence of [the defendant's] actions." *Id.* at 1245. "Once a conspiracy is established, even slight

evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement." *Id.*

There is ample evidence on the record here—including testimony from a confidential informant, recorded conversations involving the Defendant, two sales of methamphetamine involving the Defendant, testimony concerning how drug dealers operated, and Defendant's admission to the police that a person named Selvo paid him $1,000 to transport methamphetamine from Colorado to Kansas City three days before his arrest—that supports the jury's verdict.

## Conclusion

For the foregoing reasons, Defendant Gilberto Baldenegro-Valdez's Motion for Judgment of Acquittal, or Alternately Motion for New Trial (doc. 117) is DENIED.

**IT IS SO ORDERED.**

Date:  June 1, 2011                           /s/ Greg Kays
                                              GREG KAYS, JUDGE
                                              UNITED STATES DISTRICT COURT